# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 27, 2022          Decided March 22, 2022

No. 20-1422

LSP TRANSMISSION HOLDINGS II, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC
COMPANY AND AVANGRID NETWORKS, INC.,
INTERVENORS

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

*Michael R. Engleman* argued the cause for petitioner. With him on the briefs were *Robert C. Fallon* and *Christina Switzer.*

*Amber L. Stone* argued the cause for intervenor Massachusetts Municipal Wholesale Electric Company in support of petitioner. With her on the brief was *Scott H. Strauss.*

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General Counsel, and

*Robert H. Solomon*, Solicitor.

Before: ROGERS and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: LSP Transmission Holdings II, LLC, is an independent electric transmission developer. It regularly bids on proposals to build transmission projects throughout the United States. LSP brings this petition for judicial review of a decision of the Federal Energy Regulatory Commission concerning ISO New England's[1] compliance with Commission Order No. 1000.

Among other things, Order No. 1000 required "the removal from Commission-jurisdictional tariffs and agreements of provisions that grant a federal right of first refusal to construct transmission facilities selected in a regional transmission plan for purposes of cost allocation." *See* Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities, 136 FERC ¶ 61,051, P. 225 (2011). Instead of a right of first refusal, the Commission directed incumbent transmission providers to engage in competitive selection of developers—which meant describing the project, soliciting proposals, and evaluating bids. *See id.*; *see also S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 72–73 & n.6 (D.C. Cir. 2014). But the Commission recognized an exception central to this dispute:

---

[1] ISO New England is a private, non-profit regional transmission organization that administers New England's energy markets and operates "the region's bulk power transmission system." *Braintree Elec. Light Dep't v. FERC*, 550 F.3d 6, 9 (D.C. Cir. 2008) (internal quotation marks omitted).

if the time needed to solicit and conduct competitive bidding would delay the project and thereby threaten system "reliability," then competitive bidding would not be required. 136 FERC ¶ 61,051, P. 329.

In approving ISO New England's tariff revisions in 2013, the Commission reaffirmed "that in certain instances time constraints may not allow for the open solicitation of reliability-related transmission projects without risking reliability to the system." *ISO New Eng. Inc.*, 143 FERC ¶ 61,150, P. 235 (2013) [hereinafter Compliance Order]. The Commission listed criteria to govern whether a right of first refusal applied to reliability projects, one of which was that "the reliability project must be needed in three years or less to solve reliability criteria violations." *Id.* P. 236. The three-year limit is less than what ISO New England sought—it wanted to exempt projects needed within five years. *Id.* PP. 220, 237. The Commission rejected that proposal, concluding that such an extended time-frame for designating a project as an urgent system-reliability need "would effectively preclude the benefits of competition in selecting the more efficient or cost-effective projects." *Id.*

By 2019, the Commission had become concerned that ISO New England and other utilities were acting inconsistently with the competitive selection requirements of Order No. 1000 and later orders. *See ISO New Eng. Inc.*, 169 FERC ¶ 61,054 (2019) [hereinafter Show Cause Order]. The Commission, invoking Section 206 of the Federal Power Act ("FPA"), 16 U.S.C. § 824e, directed ISO New England to:

(1) demonstrate how it is complying with the immediate need reliability project criteria; (2) demonstrate that the provisions in its tariff, as implemented, containing certain exemptions to the

requirements of Order No. 1000 for immediate need reliability projects remain just and reasonable; and (3) consider additional conditions or restrictions on the use of the exemption for immediate need reliability projects to appropriately balance the need to promote competition for transmission development and avoid delays that could endanger reliability.

*Id.* P. 1.

Particularly troubling to the Commission was the number of ISO New England projects with estimated "need-by dates" occurring within the three-year window, but before the projects would become operational. *Id.* P. 8. Need-by dates are estimated dates when a project would be needed to guarantee system reliability. In-service dates are the projected dates when a completed project would be fully operational. ISO New England explained that a need-by date can predate an in-service date because ISO New England uses "a more conservative set of assumptions" about when a project will be necessary to prevent reliability shortfalls.

LSP intervened in the § 206 proceeding. In its comments, LSP emphasized that since 2016, ISO New England had exempted from competition "virtually every . . . reliability need" project—that is, thirty of thirty-one such projects. J.A. 303. LSP urged the Commission to eliminate or limit the competition exception for system reliability projects.

The Commission found "insufficient evidence" that ISO New England was incorrectly implementing Order No. 1000 and its progeny. *ISO New Eng.*, 171 FERC ¶ 61,211, PP. 1, 55 (2020) [hereinafter Termination Order]. The Commission saw no error in ISO New England's use or calculation of need-by dates, which the Commission thought provided for

contingencies and ensured reliable service. *Id.* PP. 56–59. There was no dispute that ISO New England followed the Compliance Order. *Id.* P. 60. For those same reasons, the Commission denied LSP's rehearing petition. *See ISO New Eng.*, 172 FERC ¶ 61,293 (2020) [hereinafter Rehearing Order].

I.

The Commission seeks to convince us that LSP does not have standing and that even if it does, the Commission's decision is immune from judicial examination.

A.

As to standing, the Commission asks how LSP could have suffered an Article III injury when the Commission "made no changes to the existing, previously-approved planning criteria." The law has long been clear: to establish injury, LSP had only to show that it "was ready, willing and able to perform" and that Order No. 1000 and the tariff "deprived the company of the opportunity to compete" for the work. *O'Donnell Constr. Co. v. District of Columbia*, 963 F.2d 420, 423 (D.C. Cir. 1992); *see Carney v. Adams*, 141 S. Ct. 493, 499–500, 503 (2020); *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). LSP met these requirements. It demonstrated its readiness when its subsidiary bid on the only one of thirty-one recent reliability projects open to competitive bidding. Yet because of the Commission's criteria, there was no competitive bidding for the thirty other transmission projects. LSP accordingly has suffered an Article III injury.

*LSP Transmission Holdings, LLC v. FERC*, 700 F. App'x 1, 2 (D.C. Cir. 2017) (per curiam), has no bearing on this case. We held that LSP lacked standing to claim that a utility wrongfully excluded it "from competition based on state and

local laws." *Id.* We so held because LSP failed to identify a "specific project that [the utility] has approved for regional cost allocation in a state whose law gives an incumbent a right of first refusal . . .." *Id.* The situation here is quite different. There can be no doubting LSP's assertion that it has been denied the ability to bid on the thirty identified projects as a result of ISO New England's implementation of the Compliance Order.

## B.

The Commission's argument that its ruling is immune from judicial questioning rests on the Supreme Court's interpretation of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), in *Heckler v. Chaney*, 470 U.S. 821 (1985). Its action here is reviewable. The Commission invoked § 206 of the Federal Power Act, 16 U.S.C. § 824e, and issued a show cause order under 18 C.F.R. § 385.209(a). Show Cause Order P. 1 & n.2. Proceedings under FPA § 206 result in "substantive adjudicative decisions." *Pub. Citizen, Inc. v. FERC*, 7 F.4th 1177, 1196 n.4 (D.C. Cir. 2021). *Compare* 16 U.S.C. § 824e(a), *with* 5 U.S.C. § 554(c). The Commission published notice of the proceeding in the *Federal Register* "with interventions due within 21 days of publication." Termination Order P. 5. Multiple organizations, including LSP, timely moved to intervene and filed comments. *Id.* PP. 5–8. The Commission considered and addressed these comments in concluding that no further action was needed. *Id.* PP. 12–63.

As for the order itself, the Commission resolved the matter on the merits. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). It explained that further action was unnecessary because ISO New England had complied with Order No. 1000 and its Tariff. Termination Order PP. 55–60. The order terminating the proceeding is replete with invocations of agency precedent and reasons for retaining the exemption

criteria. *Id.*

The Commission's ruling thus bears all the indicia of a substantive decision produced after a contested proceeding involving not only ISO New England but also numerous intervenors. It is therefore subject to judicial review.

II.

On the merits, LSP's main argument is that the Commission should have required ISO New England to use in-service dates rather than need-by dates to determine whether a reliability project would be exempt from Order No. 1000's competitive-selection requirement. LSP claims that using need-by dates has led to nearly all reliability projects being exempt from competition, even though the projects did not come on line for years after their need-by dates had passed—a situation LSP describes as the exception swallowing the rule.

The Commission recognized that need-by dates "often occur" well before in-service dates. Rehearing Order P. 31. And it addressed the contention that need-by dates are inferior to in-service dates. Relying on a prior decision, the Commission explained why "it is proper to use the date a reliability need must be addressed rather than the expected in-service date of the project chosen . . .." *Id.* P. 29; *see PJM Interconnection, L.L.C.*, 156 FERC ¶ 61,030, P. 24 (2016), *vacated on other grounds by Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254 (D.C. Cir. 2018).

An agency "need not repeat itself incessantly" and can dispose of claims by relying upon prior actions provided the agency's earlier reasoning has not been rendered invalid. *Bechtel v. FCC*, 10 F.3d 875, 878 (D.C. Cir. 1993); *see also Lichoulas v. FERC*, 606 F.3d 769, 777 (D.C. Cir. 2010). Using

need-by dates rather than expected in-service dates to decide if a project falls within the Compliance Order's needed-within-three-years-or-less requirement, the Commission said, accomplishes the purpose of getting urgent projects fulfilled expeditiously.  Rehearing Order P. 30.  Most concerning to the Commission was that measuring by in-service dates could delay urgently needed projects that would take more than three years to complete because such projects would be subject to the competitive-bidding process.  *Id.*[2]  In explaining the foundation for using need-by dates, the Commission adequately addressed LSP's objection.

We see nothing irrational in the Commission's response to LSP's general criticism of ISO New England's use of more conservative assumptions regarding its system capacity and future management.  *Id.* P. 28.  The Commission explained that ISO New England's methodology—and specifically its use of need-by dates—helps ensure "reliable service to load under a wide range of operating conditions . . .."  Termination Order P. 58.  And the Commission noted that "the use of more conservative study assumptions in transmission planning is consistent with applicable North American Electric Reliability Corporation (NERC) Reliability Standards."  Rehearing Order P. 28.

Also, according to LSP, the Commission improperly

---

[2] "Using the anticipated in-service date instead of the need-by date could lead to the perverse result where the immediate need reliability project exemption would apply to a project needed in three years if it could be placed in service within three years, but that the more time-consuming competitive proposal window process would be required to address a reliability solution needed in one year if it could not be placed in service within three years.  Use of the needed by date prevents such an inappropriate outcome."  Rehearing Order P. 30.

departed from the precedent set in Order No.1000 and later orders. LSP's evidence of this is that the overwhelming majority of ISO New England's reliability projects fell within the exception from competition. In response, the Commission reaffirmed the decisional process for designating a project as an urgent reliability need—finding that the "criteria appropriately balance reliability and competition." Rehearing Order P. 23. The Commission noted that "the frequency" of the exception's invocation "does not alone provide sufficient evidence that the Tariff is unjust and unreasonable." *Id.* The Commission pointed to a recent instance where a reliability-project solicitation was conducted competitively. *Id.* P. 24. And the Commission determined that ISO New England had correctly applied the Compliance Order's criteria. *Id.*

LSP frames its argument in terms of requiring the Commission to follow its precedents. But LSP urges the Commission to abandon its current rules because far too many projects are winding up exempt from competition. LSP may have a point. If a theory does not work in practice, there is usually something wrong with the theory. *See* JOHN STUART MILL, AUTOBIOGRAPHY 79 (J. Bennett ed., 2017) (1873). Yet LSP did not challenge the Commission's finding that ISO New England had not violated the Commission's tariff. And although the number of reliability projects so far exempted from competitive bidding exceeded those open to competition, the appropriate balance struck—between competitive procurement and quick redress of reliability needs—is the sort of policy judgment left to the Commission. *See Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 971 (D.C. Cir. 1999).

*The petition for judicial review is denied.*